State ex rel. Bannen v. Arnold, 151 Wis. 38.

STATE EX REL. BANNEN, Respondent, vs. ARNOLD, Tax Commissioner, Appellant.

*October 8—October 29, 1912.*

*Officers: City civil service: Removal or discharge: Mistake as to cause: Remedies: Mandamus.*

Where a head of a department has acted in good faith, under sec. 4, ch. 313, Laws of 1895, as amended by ch. 547, Laws of 1911, in the matter of the removal of a subordinate for cause, even though he may have been mistaken as to the existence of the cause assigned, the remedy given by said section by way of making answer and being heard in the matter is exclusive, and reinstatement will not be compelled by *mandamus* or other judicial proceeding.

APPEAL from an order of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Reversed.*

*Mandamus* to compel the tax commissioner of the city of Milwaukee to recognize the relator as assessor for the Sixteenth ward of such city and to fully reinstate him in such office from which he had been, in form, removed.

The proceedings were the same in this case and based on the same state of facts as in *State ex rel. Hayden v. Arnold, ante,* p. 19, 138 N. W. 78, except the change of ward boundaries, as stated in the petition, left the relator still a resident of the Sixteenth ward, for which he was appointed, with no other assessor residing therein, though the order of removal was grounded on the theory that the Fourth ward, as reorganized by the ordinance changing the ward boundaries, included the residence of the relator and that of another assessor.

For the appellant there was a brief by *Daniel W. Hoan,* city attorney, and *Garfield S. Canright,* assistant city attorney, of counsel, and oral argument by *Mr. Canright.*

For the respondent there was a brief by *Miller, Mack & Fairchild,* and oral argument by *George P. Miller* and *J. G. Hardgrove.*

MARSHALL, J.   This case, in the main, is ruled by the de-
cision in *State ex rel. Hayden v. Arnold, ante,* p. 19, 138
N. W. 78, mentioned in the statement.   The only difference
as to facts is that, the cause assigned for removal did not ex-
ist.   But we are constrained to hold that such circumstance
cannot make any difference.   Manifestly, the legislative pur-
pose was that relief from any mistake of that sort should be
sought by the specific means provided in the civil service law.
The relator, in accepting office under it, submitted to its pro-
visions, including those empowering the commissioner to re-
move him at pleasure, filing a statement of the reasons, to
which, as indicated in the former case, the law gives oppor-
tunity to answer.

Sec. 4 of the civil service law (ch. 313, Laws of 1895),
in the beginning, clothing the appointing power with power
of removal or discharge at pleasure, does not suggest that such
power is usable otherwise than within the boundaries of dis-
cretion and for legitimate purposes.   The fact that the leg-
islature saw fit by ch. 547, Laws of 1911, to amend such sec-
tion by providing, specifically, that exercise of the power of
removal must be for cause, not "religious or political" and
"be set forth in detail in writing and be filed within ten days
with the secretary of the city service commission," . . . "any
such discharged subordinate" to "be given an opportunity to
make answer and his answer, when made in writing," to be
"filed with the secretary of the commission," suggests that
the legislature contemplated such joining of issue, at the op-
tion of the discharged employee, to afford him a hearing of
some sort before the administrative head respecting exist-
ence of the cause assigned and redress by reinstatement in
case of its appearing to the responsible officer that he had mis-
judged the matter.   It was competent for the legislature to
give or not give this opportunity.   In case of the latter, and
a person accepting service under the law, he has no reason to
complain.   In case of the former, so long as the appointing

and removing officer acts within his jurisdiction, the remedy afforded is exclusive. That is according to elementary principles, therefore we will not emphasize it by citation of authority.

Applying the foregoing, in view of the fact, which satisfactorily appears, that the tax commissioner acted in the removal proceedings in the honest belief that the cause assigned for displacing relator existed, the latter's remedy, if such cause did not exist, was under the civil service law, not by ignoring it and appealing to the courts in a *mandamus* or other proceeding. If such were not the case, then, every time an appointing authority under the civil service law acts under the correlative power to discharge or remove, he would do so in peril of having to justify his action in judicial proceedings by showing satisfactorily to some court of general jurisdiction within his judicial district, that the cause assigned exists and is sufficient. Certainly the legislature did not contemplate any such thing. Nothing of the sort is suggested, expressly, in the language of the law. Nothing of the sort is suggested by it, inferentially. The legislative policy, evidenced by the enactment, is repellent to any such thing. To engraft upon it any such an incident by construction, would undermine the law by taking from it one of the most essential elements of the legislative plan, *i. e.* to give the appointing authority the largest practicable measure of discretionary power to act summarily, in all cases, respecting the incumbency of subordinate positions, with reasonable opportunity to correct mistakes upon the same being brought to attention in the manner specified; such course being supposed to be promotive of, if not actually necessary to, the best attainable performance of subordinate duties.

So, regardless of whether the assigned cause existed for the removal of the relator, his remedy was not that to which he resorted. The petition for the writ shows that the tax commissioner exercised the power of removal for cause, as the

facts appeared to him, and that the relator instead of following the course open to him for having the mistake, if there were one, corrected, commenced a hostile judicial proceeding. As well may a defeated litigant in a trial court which has rendered judgment on a mistaken notion of the facts, instead of following the proper remedy for redress, commence an action against the judge to compel him to correct his mistake. Obviously, a complaint in such circumstances, would state no cause of action for relief within the competency of a court to grant. The same is true in this case. So the motion to quash the alternative writ should have been granted and the proceedings dismissed.

*By the Court.*—The order appealed from is reversed, and the cause remanded with directions to dismiss the proceedings with costs.